### In the Matter of VMS LIMITED PARTNERSHIP SECURITIES LITIGATION.

**Consolidated Pretrial Proceeding.**

**No. 90 C 2412.**

United States District Court, N.D. Illinois, E.D.

July 16, 1991.

Robert E. Shapiro, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, Ill., for Equity Resources Group, Inc.

Timothy A. Nelsen, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for Prudential Securities.

Jeffrey P. Lennard, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for VMS Ltd. Partnership.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

VMS Realty Partners and Prudential Securities want an order requiring Equity Resources to submit to the Court communications to class members concerning the terms of the proposed Settlement Agreement. Equity Resources has sent and anticipates sending thousands of letters ("the

Letters") to class members in at least seven settling limited partnerships.

Equity Resources purchased partnership units in twenty-three or twenty-five [1] of the settling limited partnerships. None of these purchases were in the initial offering and several of these partnership interests were acquired by Equity Resources after this Consolidated Action began. Equity Resources has successfully solicited fees from limited partners in seven partnerships in which it has purchased interests for the purpose of representing the interests of these limited partners in various partnership affairs. Equity Resources stands on a slightly different footing from the other limited partners, and is not as it contends merely a "fellow limited partner", for purposes of this motion. Equity Resources' motivation in purchasing into these partnerships is different from the typical investor who purchased his interest at the outset. Equity Resources, most notably, has conceded to soliciting and receiving fees from various limited partners.

The movants contend that the proposed communications misrepresent material terms of the Settlement Agreement. The movants' principal concern is over the issue of "pooling." The notice of the Settlement Agreement, with respect to the source of settlement funds, states:

> The proposed settlement will not limit the rights of settling Class members to receive cash proceeds to which they would be entitled under the terms of the limited partnership agreements of the Settling Limited Partnerships upon the sale or other disposition of the assets of the applicable Settling Limited Partnership. The portion of the net cash distributions described above which will be deposited into the escrow for the benefit of the settling Class members is money which, in the absence of the proposed settlement, would belong to certain VMS Settling Defendants. This money would not belong to any Settling Limited Partnership or any limited partners of a Settling Limited Partnership.

The movants allege that the Letters conflict with this information. For example, the letter relating to Shoreham Hotel Limited Partnership states:

> It appears likely that the proposed settlement will call for the combining of monies deriving directly and indirectly from the Shoreham Hotel property (such as the wraparound mortgage) with those of other VMS partnerships. The danger is that proceeds to be derived from Shoreham Hotel could be substantially directed to compensating investors in the vast majority of VMS partnerships that have fared worse than Shoreham. Upon analysis of the finalized settlement, we may conclude that the limited partners will do best to withhold our consent to this settlement and to make separate arrangements for our partnership.
>
> · · · · ·
>
> In our opinion, the settlement constitutes, in some ways, an effective pooling of assets related to the Shoreham Hotel property....

Exhibit 2 attached to Affidavit of Scott L. Lager. *See also* Exhibits 3 and 4.

We note that "pooling" in the framework of this litigation (or in any litigation involving a group of limited partnerships in which each partnership controls a distinct asset) is a crucial issue. As VMS' counsel aptly stated, by deceptively raising the pooling issue Equity Resources might stir the coals of unfounded fear in some investors; specifically: investors in better-situated limited partnerships who fear their interests will be pooled with much more financially distressed limited partnerships. *See* Transcript of Proceedings, May 20, 1991, at 13. The settling parties agreed to a Settlement Order that alerted the class members that they would not be subject to such a pooling. To intimate differently is to mislead.

Equity Resources contends that the movants have taken the word "pooling" out of context and are thus misconstruing their Letters. We are somewhat less concerned with the precise definition of "pooling"

---

**1.** Equity Resources is unclear on the number of   partnerships in which it has purchased interests.

than with the probable effect this word (and its equivalents), in the context of the Letters, will have on the reasonable investor. We agree with VMS' counsel that Equity Resources' Letters could easily be interpreted by the average investor to imply that pooling is a necessary part of the Settlement Agreement.

We find that the Letters, in the context of the notice approved by this Court and of the complex nature of this litigation, are deceptive. Anything less than an unambiguous statement in this context would mislead a reasonable investor.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "notice of the proposed ... [class action] compromise shall be given to all members of the class in such manner as the court directs." The Supreme Court has admonished, however, that we be careful not to overstep "directing" under the meaning of Rule 23 and tread into the area of unconstitutional restriction of the plaintiff's communication. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Supreme Court in *Gulf Oil* recognized that Rule 23 gives the District Court discretion to limit communication among class members. The Court held, however, that such an order must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.,* 101 S.Ct. at 2200.

We find that the need for a narrow limitation on the communication between Equity Resources and other limited partners involved in settling partnerships outweighs the potential interference with the parties rights. The material misstatements. contained in the Letters demonstrate a potential for deception in future communication and confusion among the limited partners. We find that these misstatements, if left unchecked, will harm the limited partners by misleading them about the Settlement Agreement and by materially disrupting this litigation in contravention of the purposes of Rule 23.

If the settlement is disrupted no adequate remedy will likely follow. Our concern is not whether the settlement proposal succeeds or fails on its own merit. Our concern is that the proposed Settlement Agreement may well be shown to be reasonable and yet fail due to a material misrepresentation made by Equity Resources. Equity Resources and its lawyers would be inadequate sources of relief in this event.

Also, we find that the limitation order described below minimally interferes with Equity Resources and the limited partners' rights. The order is not a blanket prohibition on communication, but rather requires Equity Resources to submit to this Court settlement communications targeted at class members who have not agreed for Equity Resources to represent their interests.

Equity Resources contends that there is no authority to support restrictions on communications between parties whose interests are aligned. *See Superior Beverage Co. v. Owens–Illinois, Inc.,* 1988 WL 87038, 1988 U.S.Dist.Lexis 9094 (N.D.Ill.). Although this may be true generally, we find for the reasons stated earlier that the interests of Equity Resources and the other limited partners are not completely aligned. Thus, the danger of interfering with communication among like-minded or inseparable plaintiffs is not nearly as great in this case as it has been in others.

Equity Resources also argues there is no evidence to support the motion. We disagree. The Letters reveal the basic nature of Equity Resources' business and its interest in this litigation. These facts are not disputed. The only thing in dispute here is not material: the precise degree to which Equity Resources has successfully solicited fees from other limited partners. We also have before us the Letters containing the challenged statements, which were sent to all limited partners in at least three partnerships, Shoreham Hotel, L.P., Chicago Resorts, Ltd., and Frenchman's Reef Hotel, Ltd. *See* Exhibits 2, 3, and 4 attached to Affidavit of Scott L. Lager. In addition, we have in the record the Settlement Agreement containing the true terms of the settlement. We thus have before us

what Equity Resources has done and we find it misleading.

We grant VMS Realty Partners and Prudential Securities' Motion according to the following narrow terms: before any communication is distributed to substantial numbers of investors in any settling limited partnership, Equity Resources will file such communication with the Court and serve a copy upon the signatories to the Settlement Agreement. Equity Resources will be barred from distributing any such proposed communication for seventy-two hours after such service upon the Court and parties and, if a party files an objection with the Court within the seventy-two hour period, Equity Resources will be barred from distributing the communication until further order of the Court. The Court will rule on objections by the end of the next business day following the day on which the objection is filed.[2] This order does not apply to any communication between Equity Resources and any limited partner who has paid or who has agreed to pay contributions to Equity Resources in order to have his interest represented in various partnership affairs.

The Court also orders that Equity Resources file with the Court all previous communications to limited partners in the VMS entities except those communications sent to limited partners it represents and sent after Equity Resources represented them.

---

**2.** We express no view as to the correct remedy if we sustain an objection to any challenged state-
ment. We leave that issue to another day.