**In the Matter of VMS LIMITED PARTNERSHIP SECURITIES LITIGATION.**

**Appeal of Edward J. BERGER and Barbara B. Berger.**

No. 93-3892.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1994.

Decided June 6, 1994.

Michael D. Hayes, Perri L. Irmer, Holleb & Coff, Chicago, IL, Paul K. Stecker (argued), Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for appellants.

Keith F. Bode, Jerold S. Solovy, Ellen R. Kordik, C. John Koch, J. Kevin McCall (argued), Jenner & Block, Chicago, IL, for appellees.

Before BAUER, WOOD, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

As part of a settlement, members of the class in this case agreed to give up all securities claims against CIGNA Securities, Inc., in exchange for modest payments. CIGNA provided financial planning services to Edward J. Berger, and the settlement entitled him to a rebate of a portion of the annual fees he had paid. Before he received the notice informing him of the settlement, Berger had begun to mull over the possibility of suing CIGNA for advising him to make investments that turned sour. Brian D. Yaiser, an account executive at CIGNA's office in Buffalo, New York, had steered Berger into real estate limited partnerships, which flopped. Berger believed that the investments were not adequately diversified—and, because a substantial part of the return of such partnerships is tax benefits, that they were not appropriate for a retirement account already sheltered from income taxes.

Berger had two months to decide whether to opt out of the class, an essential step if he wanted to pursue an independent

claim. Although Berger has a college degree, he says that he did not understand the notice, which contains five pages of small type. Written in clear prose, the notice still uses legal terms, and an investor who wanted to know what would happen if he did not opt out needed to follow a chain of cross-references. The final paragraph of the notice told the class members what to do if they had questions: get in touch with the lawyers representing the class. Instead of doing so, or hiring his own attorney, Berger called _____ Yaiser, the very person he believed had filled his ears with awful advice. He asked Yaiser whether he should submit a claim in the class action. Yaiser told him to do so. Berger asserts that he asked Yaiser whether submitting a claim would affect anything other than the $5,500 he had paid in financial planning fees, and that Yaiser replied that the form affected only those fees. So Berger submitted the form claiming a share of the settlement proceeds. Later he hired a lawyer, who demanded arbitration of the unsuitable-investment claim under the terms of the contract with CIGNA. He also tried to opt out of the class, but after the date for doing so had passed. A district judge has enjoined this arbitration, deeming Berger bound by the terms of the settlement.

■ Berger insists that only the arbitrator may decide whether Yaiser's answer precludes CIGNA from enjoying the benefits of the settlement. Arbitrators possess the power to decide whether earlier decisions preclude new claims. E.g, *Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R.*, 24 F.3d 937 (7th Cir. 1994); *DVC–JPW Investors v. Gershman*, 5 F.3d 1172, 1174 (8th Cir.1993). But whether there is an effective arbitration agreement is a question for the court. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir.1993). Just as a right to arbitrate is created by contract, so it may be abolished by contract. The plaintiff class in this case not only released other claims but also surrendered any entitlement to arbitration its members formerly possessed. The investors authorized the district court to squelch all efforts to make end runs

around their agreement. CIGNA presumably paid the class for the peace thus proclaimed, and the investors cannot have both the compensation and the right to arbitrate. Defenses to the preclusive effect of the settlement therefore must be presented to the district court, just as we held in a related case. *In re VMS Securities Litigation*, 21 F.3d 139, 141 (7th Cir.1994).

■ By electing not to opt out of the class, Berger received the benefits and accepted the detriments of the settlement. He believes, however, that Yaiser's statements (bad litigation advice on top of bad investment advice) bar CIGNA from enforcing the release against him. The district court replied that the terms of the notice are clear, and that explicit documents prevail over inconsistent oral statements. See, e.g., *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1131–32 (7th Cir.1993); *Associates in Adolescent Psychiatry v. Home Life Insurance Co.*, 941 F.2d 561, 571 (7th Cir.1991); *Jackvony v. RIHT Financial Corp.*, 873 F.2d 411 (1st Cir.1989) (Breyer, J.). This would be a sound way to think about the problem if Berger were accusing CIGNA of fraud in the sale of securities. But although Berger uses the language of "fraudulent misrepresentation," he is effectively arguing that Yaiser's statements estop CIGNA to enforce the release. Claims of equitable estoppel suppose a clear rule that prevails in the absence of the statement. For example, a law fixing the statute of limitations at two years may be unambiguous, but a promise not to plead the statute of limitations, made during the course of settlement negotiations, is enforceable. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir.1990). The statement does not "contradict" the statute of limitations; it is simply a promise not to invoke it. Similarly, if in the course of negotiations the representative of the putative defendants asserted that the statute of limitations is three years, inducing the plaintiff to delay filing suit, a court would not permit the defendant to argue, once the case begins, that the limit really is two years and that the suit should be dismissed as untimely. *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79

S.Ct. 760, 3 L.Ed.2d 770 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1323–24 (11th Cir.1989).

What undermines Berger's position is not the clarity of the notice so much as it is the sheer unreasonableness of relying on Yaiser's statements. See *Vadino v. A. Valley Engineers*, 903 F.2d 253, 263 (3d Cir.1990); *Curry v. A.H. Robins Co.*, 775 F.2d 212, 219 (7th Cir.1985). Yaiser is not a lawyer and did not participate in the negotiation of the settlement. When perplexed by terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer. Berger was contemplating hiring one, but all along he was entitled to the aid of the law firm representing the class. The notice told him to present questions to class counsel. Understanding that advice did not require legal sophistication or following a thread of cross-references. Nothing in the notice suggested that investors should put questions to CIGNA. Yaiser did not have either actual or apparent authority to give advice about the legal implications of the settlement or to bar CIGNA from enforcing its terms.

What is more, Berger did not tell Yaiser why he was asking the question. From an account representative's perspective, a query such as "whether sending in the Claim Form would affect anything other than the financial planning fees" may seek information about whether a claim would alter the holdings of or transactions in the account. Would it freeze the account or reduce its balance? Change the securities in the account? The answer to these and related questions is "no." Had Berger been more specific, asking a question such as "Will sending in the Claim Form affect my right to recover $700,-000 for steering me toward stupid investments?" Yaiser might have given a different answer (such as "Both of us need to talk to lawyers."). Berger's demand for arbitration seeks that sum, more than two orders of magnitude greater than the investment fees; $700,000 is enough to concentrate the mind. Today's case does not depend on how Yaiser interpreted Berger's question, however, or on what answer would have been forthcoming to a more direct question. The point is that Berger could not reasonably rely on the advice of a non-lawyer who lacked authority to interpret the settlement agreement.

So far we have been referring exclusively to Edward Berger. Some of the securities in the account were owned by his wife Barbara; some were owned by Edward and Barbara jointly. Barbara Berger contends that she is entitled to recover from CIGNA even if Edward may not so do. The settlement affects only members of three subclasses. The one pertinent here includes persons who "entered into a financial planning agreement with CIGNA Securities, Inc. or with any other CIGNA entity for a fee." An "ongoing financial planning services contract" dated June 27, 1990, lists both Edward Berger and Barbara Berger as CIGNA's clients; Yaiser spoke with both Edward and Barbara before recommending investments; both Bergers made investments after these consultations. How then could Barbara *not* be party to a "financial planning services contract" with CIGNA? Her answer is that although her name is on the contract, she did not sign it; only Edward signed. This gets her nowhere. Edward held her power of attorney, and, if this were not enough (he did not sign expressly as her agent), she ratified the contract by accepting services under it. The district court properly held that both Bergers are bound by the settlement.

AFFIRMED.