103 F.3d 1317
 In the Matter of: VMS SECURITIES LITIGATION.
In the Matter of: VMS LIMITED PARTNERSHIP SECURITIES
LITIGATION Robert Taylor, Roberta Taylor, Foster Fluetsch,
Lorna Crooks, Jack Shoemaker, Marie Shoemaker, and David
Sells, Plaintiffs-Appellants-Cross-Appellees,
v.
PRUDENTIAL SECURITIES INCORPORATED,
Defendant-Appellee-Cross-Appellant.
 Nos. 95-2526, 95-2635, and 95-2619.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 6, 1995.
Decided Dec. 31, 1996.
 
 Joseph A. Grear, Rolf O. Stadheim, Stadheim & Grear, Chicago, IL, Allan S. Haley (argued), Archibald M. Mull, III, Old Sacramento, CA, William J. Barcellona, Irving H. Perluss, Edward T. Clifford, Greve, Clifford, Wengel & Paras, Sacramento, CA, for Plaintiffs-Appellants-Cross-Appellees.
 Miriam Goldman Bahcall (argued), Rawn H. Reinhard, Coffield, Ungaretti & Harris, Donna L. McDevitt, Timothy A. Nelsen, Skadden, Arps, Slate, Meagher & Flom (Illinois), Chicago, IL, for Defendant-Appellee-Cross-Appellant.
 Before LAY,* CUDAHY, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 This case involves a group of investors who attempted to bring a state class action lawsuit in California alleging that Prudential Securities, Inc. ("Prudential") fraudulently induced them to participate in two class action settlements in the United States District Court for the Northern District of Illinois. The federal district court approved the two settlements and entered final judgments thereon.
 
 
 2
 Subsequently, Robert Taylor, Roberta Taylor, Foster Fluetsch, Lorna Crooks, Jack Shoemaker, Marie Shoemaker, and David Sells (the "California Investors") filed a state court complaint in California asserting claims for fraud, breach of fiduciary duty, and negligent misrepresentation. The Investors claimed that Prudential provided them with fraudulent and misleading information in an attempt to prevent them from "opting out" of the two federal class action settlements.
 
 
 3
 Prudential asked the two federal district court judges-Judge Conlon and Judge Zagel--to enforce their final judgment orders against the California Investors; both judges granted Prudential's motions, thereby enjoining the California class action lawsuit. The California Investors appeal these decisions, as well as the decision by Judge Zagel to declare the California claims legally insufficient. Prudential filed a cross-appeal from Judge Conlon's final judgment order--which refused to discuss the merits of the California claims--seeking a declaration that those claims were legally insufficient.
 
 
 4
 We affirm the decisions enjoining the California class action suit and find it unnecessary to address the legal merits of the California claims.
 
 I. HISTORY
 
 5
 This consolidated appeal arises from the approved settlements and final judgment orders from two class actions in the federal district court in Chicago. The California Investors were plaintiffs in the two class actions--In re VMS Securities Litigation, No. 89 C 9448 and In re VMS Limited Partnership Securities Litigation, No. 90 C 2412-before District Judges Suzanne B. Conlon and James B. Zagel respectively. Prudential was one of the named defendants in both class actions. Both lawsuits arose out of the offer and sale of various securities sponsored by VMS Reality Partners and its affiliates.
 
 
 6
 In the class action before Judge Conlon (the "VMS Funds" action), plaintiffs represented all persons, except for defendants, who had purchased an interest in any VMS fund before August 21, 1990. On September 24, 1991, the parties reached a settlement in which all defendants agreed to pay the class approximately $59 million in exchange for the plaintiffs' release of their VMS Funds claims.
 
 
 7
 The proposed Stipulation and Agreement of Settlement, later approved by the district court, provided that plaintiffs release "every asserted or potential" claim under "federal, state or common law" arising out of any acts, facts, representations, occurrences, transactions, or other business relating to the VMS entities or funds that occurred on or before August 21, 1990. In the settlement, plaintiffs further released
 
 
 8
 every asserted or potential claim that in any manner whatsoever relates to the purchase or sale of any securities of any of the Funds by any Class Member during the Class Period [November 14, 1984 through August 21, 1990] or to the decision to continue holding any such securities purchased during the Class Period to and including the date of signing of the Stipulation [September 24, 1991].
 
 
 9
 Following Judge Conlon's approval of the proposed settlement, class notices were sent to potential class members in early October 1991; class members had until November 9, 1991 to opt out of the proposed settlement. In the class notice, Prudential was identified as one of the defendants charged with "the making of false and misleading statements and/or omissions of material facts." The notice further provided class members with the name and address of lead class counsel, as well as a toll-free telephone number that they could call for information regarding the proposed settlement.
 
 
 10
 In the action before Judge Zagel (the "VMS Partnership" action), plaintiffs represented all persons, except for defendants, who purchased interests in the VMS Partnership before December 31, 1989. The VMS Partnership action settled in March of 1991, with the defendants agreeing to pay the class over $24 million in cash, future cash, and other non-cash consideration in exchange for plaintiffs releasing their claims. The settlement agreement provided that plaintiffs release defendants, including Prudential, from
 
 
 11
 any and all claims ... known and unknown ... arising out of or in any way relating to any acts, facts, transactions, occurrences, representations or omissions that have been or might have been asserted in the New Action ... or in any other court or forum whatsoever, which in any way arise from or relate to the Settling Limited Partnerships....
 
 
 12
 As in the VMS Funds action, the class notice in the VMS Partnership action summarized the details of the settlement, named Prudential as one of the defendants, and provided the names and addresses of the lawyers representing the class members' interests.
 
 
 13
 In 1991, the judges in both actions approved the settlements and entered final judgments against the defendants, including Prudential. See Final Judgment of Dismissal of Class and Derivative Actions, In re VMS Sec. Litig., No. 89 C 9448 (N.D.Ill. Nov. 19, 1991) (Conlon, J.); In re VMS Ltd. Partnership Sec. Litig., No. 90 C 2412, 1991 WL 134262 (N.D.Ill. July 16, 1991) (Zagel, J.).
 
 
 14
 In both final judgment orders, the district court explicitly retained jurisdiction over the implementation and enforcement of the settlements. The final judgment from the VMS Funds action furnished the district court with
 
 
 15
 continuing jurisdiction: (a) over implementation of this settlement; ... (e) over these actions until the Final Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties shall have been performed pursuant to the Stipulation of Settlement; and (f) over all parties to these actions for the purpose of taking such other actions as may be necessary to conclude and administer this settlement and to implement and enforce the Stipulation of Settlement.
 
 
 16
 Final Judgment of Dismissal of Class and Derivative Actions, In re VMS Sec. Litig., at 17-18. The VMS Partners final judgment similarly provided that the district court would "retain[ ] jurisdiction over the Actions for purposes of implementing and enforcing the Settlement Agreement and this Final Judgment and Order." In re VMS Ltd. Partnership Sec. Litig., 1991 WL 134262, at * 6.
 
 
 17
 In December 1994, the California Investors filed a class action lawsuit against Prudential in Sacramento County, California. The class members, by definition, were California residents who purchased certain "VMS Securities" from Prudential and elected not to opt out of the Northern District of Illinois class action settlements. The California Investors put forth three causes of action in their complaint: (1) fraud and conspiracy to defraud, (2) breach of fiduciary duty, and (3) negligent misrepresentation.
 
 
 18
 In essence, the California Investors alleged that shortly after the consolidation of the first federal class action in Illinois, Prudential developed a scheme to minimize their overall litigation liability; this scheme entailed Prudential fraudulently inducing investors to join in the class settlements. The California Investors sought compensatory damages--"based on the amount of their original investment less any amount recovered in the prior class actions"--as well as punitive damages and attorneys' fees.
 
 
 19
 Once served with the California Complaint, Prudential asked Judge Conlon and Judge Zagel to enforce their final judgment orders by enjoining the California class action and declaring the California Investors' claims to be without merit. In the VMS Funds action, Judge Conlon granted Prudential's motion in part and enjoined the California Investors from further prosecuting their claims in state court, thereby thwarting their attempted " 'end run' around the final judgment." In re VMS Sec. Litig., No. 89 C 9448, 1995 WL 317085, at * 4 (N.D.Ill. May 23, 1995) (Conlon, J.). Judge Conlon, however, denied Prudential's motion in part by declining to enter judgment on the legal merits of the California claims. Id. at * 4 n. 2. The California Investors appeal Judge Conlon's decision to enjoin the California class action, and Prudential cross-appeals the court's decision not to grant declaratory relief on the merits.
 
 
 20
 In the VMS Partnership action, Judge Zagel granted Prudential's motion in its entirety, reasoning that the "California Investors are trying to evade this Court's final judgment by seeking damages for their released securities fraud claims." In re VMS Ltd. Partnership Sec. Litig., No. 90 C 2412, 1995 WL 355719, at * 3 (N.D.Ill. June 12, 1995) (Zagel, J.). The California Investors appeal this order.
 
 II. ANALYSIS
 A. The District Court's Jurisdiction
 
 21
 The primary issue in this appeal is whether the federal court, in either the VMS Funds or VMS Partnership case, had jurisdiction over the California Investors' claims. An analysis of the settlement agreements, the final judgment orders, and the relevant case law demonstrates that the district court clearly had continuing power over these final judgments.
 
 
 22
 A district court "is in the best position to interpret its own orders." Hastert v. Illinois State Bd. of Election Comm'rs, 28 F.3d 1430, 1438 (7th Cir.1993); In re Chicago, Rock Island and Pac. R.R., 860 F.2d 267, 272 (7th Cir.1988). As such, we "will not reverse a district court's interpretation of its own order 'unless the record clearly shows an abuse of discretion.' " In re Chicago, Rock Island and Pac. R.R., 860 F.2d at 272 (quoting Arenson v. Chicago Mercantile Exch., 520 F.2d 722, 725 (7th Cir.1975)); accord Hastert, 28 F.3d at 1438. "Given that the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, the exercise of that power is particularly appropriate for deferential review." Carr v. Runyan, 89 F.3d 327, 331 (7th Cir.1996) (citing Wilson v. Wilson, 46 F.3d 660, 664 (7th Cir.1995)).
 
 
 23
 This circuit firmly recognizes the power of a district court to retain jurisdiction over a settlement agreement to protect and enforce its own judgments. See McCall-Bey v. Franzen, 777 F.2d 1178, 1187-90 (7th Cir.1985). In McCall-Bey, we held that a district court rightfully retained jurisdiction to enforce a settlement agreement even though it did not expressly reserve this power in its final judgment order. Id. at 1187-88. Our reasoning in that case indicates that a district court has the power to enforce a settlement agreement in two circumstances: (1) when there is an independent basis for the district court's jurisdiction (aside from the jurisdictional basis in settled action itself), and (2) when the district court retains jurisdiction over the implementation and enforcement of the agreement in its final judgment order. Id. In the second circumstance, the district court need not use "any magic form of words" to retain jurisdiction--"[a]ll that is necessary is that it be possible to infer that [the court] did intend to retain jurisdiction." Id. at 1188. Accordingly, we also "expressed no doubt of the power of a district judge to dismiss a lawsuit conditionally, retaining jurisdiction to effectuate terms of settlement agreed to by the parties." Id.
 
 
 24
 The Supreme Court recently affirmed the principles of McCall-Bey in Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). There, the Court recognized that a district court's explicit retention of jurisdiction over a settlement agreement, or its incorporation of that agreement into its final order, satisfies any jurisdictional concerns. Id. at 380-82, 114 S.Ct. at 1677. Although the Court in Kokkonen ultimately held that a district court does not have the inherent power to enforce a settlement agreement when its final order does nothing more than dismiss the suit, the Supreme Court noted that when a lower court reserves its power to enforce a settlement, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." Id. at 378-82, 114 S.Ct. at 1676-77; see also Lucille v. City of Chicago, 31 F.3d 546, 548 (7th Cir.1994) (following Kokkonen noting that "if the judgment explicitly incorporates the settlement, or reserves authority to enforce the settlement, the court possesses ancillary jurisdiction" to protect and enforce its judgments), cert. denied, --- U.S. ----, 115 S.Ct. 1109, 130 L.Ed.2d 1074 (1995).
 
 
 25
 In both actions below, the district court expressly retained jurisdiction for purposes of implementing and enforcing the settlement agreements and final judgment orders. The language of these two final judgments (set forth above) clearly illustrates the district court's intention to maintain jurisdiction over the enforcement of the two settlement agreements. McCall-Bey's holding and Kokkonen's reasoning thus compel our finding of jurisdiction here.
 
 
 26
 We reject the California Investors' "released claims" and "time-frame" arguments because the timing of the release of the district court claims is irrelevant in this case. The Investors assert that the California claims could not have been released in the settlement agreements because those claims arose after the class periods ended and were based primarily on Prudential's "post-settlement" conduct--i.e., Prudential's conduct after the district judges had certified the class actions, approved the class settlements, and mailed out the class notices. What the California Investors characterize as "non-released" fraudulent misrepresentation and breach of fiduciary duty claims are nothing more than objections to Prudential's conduct during the class notice/opt-out period.[1] The California claims are inextricably intertwined with the approved class settlements and the class notice procedures. Therefore, whether the California Investors have put forth new or "non-released" claims is a non-existent issue; rather, the essence of this case is the continuing jurisdiction of the federal court to enforce and protect its own judgments.
 
 
 27
 The California Investors cannot reasonably assert that the federal district court was without power to adjudicate matters arising out of the class settlement procedures merely because Prudential's alleged fraudulent conduct occurred after the close of the class periods. In the VMS Funds action, the class period ended on August 21, 1990 and the final judgment was not issued until November 19, 1991. The California Investors assert that because their California claims arose from conduct occurring after August 21, 1990, those claims were not released by the settlement agreement, and thus could not be adjudicated by the federal court.
 
 
 28
 The judge in this VMS Funds case, however, had the power to decide class action matters--and did handle such matters--from August 21, 1990 to November 19, 1991: Judge Conlon preliminarily approved the settlement, she issued the class notice provision, and she entered the final judgment. The VMS Partnership class action involved a nearly identical scenario--the class period ended on December 31, 1989 and final judgment was entered on July 15, 1991. In the interval, the district judge unquestionably had the power to adjudicate matters relating to the implementation and enforcement of the class action.[2] The District Court for the Northern District of Illinois was the only appropriate place for the California Investors to address their concerns about Prudential's alleged fraud and misrepresentation in the settlement process.
 
 
 29
 The California Investors could easily have opted out of the settlement agreements in order to preserve their California claims. "By electing not to opt out of the class," the California Investors "received the benefits and accepted the detriments of the settlement." In re VMS Ltd. Partnership Sec. Litig., 26 F.3d 50, 51 (7th Cir.1994). As such, their failure to opt out manifested their consent to have the district court resolve matters involving the class action settlements. See id. ("The investors authorized the district court to squelch all efforts to make end runs around their agreement.... Defenses to the preclusive effect of the settlement therefore must be presented to the district court ...."); see also In re VMS Sec. Litig., 21 F.3d 139, 141 (7th Cir.1994).
 
 B. The District Court's Injunctions
 
 30
 Because we have determined that the final judgment orders properly retained the district court's jurisdiction over the implementation and enforcement of the settlement agreements, we must next decide whether those orders appropriately enjoined the California Investors from prosecuting their state court claims. Abuse of discretion is the proper standard of review when a district court interprets its own order and issues a permanent injunction barring a party's claims. In re Chicago, Milwaukee, St. Paul & Pac. R.R., 974 F.2d 775, 779-80 (7th Cir.1992); see also Wesch v. Folsom, 6 F.3d 1465, 1469 (11th Cir.1993) (noting that although district courts should be hesitant to enjoin state court litigation, the decision to take such action remains in the sound discretion of the district court). "Nonetheless, in applying the abuse of discretion standard, we do not give equal deference to every aspect of a court's decision. The abuse of discretion standard is used to evaluate the ... court's application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and de novo standards, respectfully." In re Chicago, Milwaukee, St. Paul & Pac. R.R., 974 F.2d at 779-80; accord Durasys, Inc. v. Leyba, 992 F.2d 1465, 1471 (7th Cir.1993) (reviewing a grant of a permanent injunction, the appellate court "should observe customary norms: we will review for clear error the district court's findings of facts, and will review de novo the district court's conclusions of law"); see also Wesch, 6 F.3d at 1469 ("The grant of an injunction is reviewed for abuse of discretion. However, if the trial court misapplies the law we will review and correct the error without deference to that court's determination.") (citations omitted).
 
 
 31
 Because the district court retained jurisdiction over both actions, it could properly remove the California Investors' claims from California state court pursuant to the All Writs Act. The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In United States v. New York Telephone Co., the Supreme Court championed a federal court's power to use the Act in order "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).
 
 
 32
 In In re Agent Orange Product Liability Litigation ("Agent Orange I"), the Second Circuit approved a district court's use of the All Writs Act to remove two otherwise unremovable Texas class actions to federal court and subsequently bar class members from litigating their Texas lawsuits. 996 F.2d 1425, 1430-31 (2d Cir.1993). In the two Texas lawsuits, plaintiffs attempted to revive the massive Agent Orange tort litigation, which had been consolidated by the Judicial Panel on Multidistrict Litigation in the Eastern District of New York. Id. at 1428.
 
 
 33
 The Multidistrict Litigation was resolved pursuant to a settlement agreement, which expressly included as class members those persons who had not yet manifested injury; the agreement permanently barred class members from instituting future actions against defendants arising from Agent Orange exposure. Id. at 1428-29. In the agreement, the district court expressly retained jurisdiction over the maintenance, distribution, and administration of the settlement fund. Id. at 1429.
 
 
 34
 After the district court approved the agreement, plaintiffs brought actions in Texas state court alleging that they or their family members suffered Agent Orange exposure injuries that were not detected until after the Agent Orange I Multidistrict Litigation settlement date. Id. at 1430. The state actions relied solely on state law and "explicitly abjured reliance on federal law." Id. The Second Circuit held that the district court properly removed these state claims to federal court under the All Writs Act asserting that
 
 
 35
 [i]t is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the Agent Orange I class action and settlement. The court best situated to make this determination is the court that approved the settlement and entered the judgment enforcing it.
 
 
 36
 Id. at 1431. The Second Circuit accordingly affirmed the order enjoining the Texas actions, reasoning that the district court had the right to enforce its "explicit, ongoing order against relitigation of matters it already had decided," and to "guard[ ] the integrity of its rulings in complex multidistrict litigation over which it had retained jurisdiction." Id.
 
 
 37
 Other circuits have similarly approved a district court's use of the All Writs Act to prevent litigants from frustrating or circumventing its orders. See, e.g., White v. National Football League, 41 F.3d 402, 409 (8th Cir.1994) (enjoining related actions pursued in other fora noting that "the ability to facilitate the present settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), cert. denied, --- U.S. ----, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); cf. Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 937 (9th Cir.1993) (refusing to apply the All Writs Act because the state complaint alleged a contract breach independent of the district court's protective order and thus, the state court adjudication would not affect interpretation or enforcement of the order).
 
 
 38
 The case presently before us is similar to Agent Orange I. The judges in both the VMS Funds and VMS Partnership actions used their retained jurisdiction to evaluate the California claims within the scope of the settlement agreements, and to prevent the circumvention of those agreements. Applying the Second Circuit's sound reasoning from Agent Orange I to this case leads us to the same conclusion that allowing the California Investors to maintain their separate actions in state court would have a substantial "deleterious effect" on the VMS Funds and VMS Partnership settlement mechanisms. Agent Orange I, 996 F.2d at 1431.
 
 
 39
 In reaching this conclusion, we do not suggest that a court may use the All Writs Act as a "jurisdictional blank check" to use whenever it deems it advisable. See id. The "exceptional circumstances" present here and in Agent Orange I, however, warrant this proper exercise of judicial discretion. Id. Thus, in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to remove and enjoin the prosecution of subsequent state court claims in order to enforce its ongoing orders against relitigation and to guard the integrity of its prior rulings over which it had expressly retained jurisdiction. See id.
 
 
 40
 Furthermore, although the California Investors assert differently, their state claims clearly attempted an "end run" around the class action settlements and thus should be treated as "disguised estoppel" claims. The courts below relied upon an earlier opinion from the sprawling mass of VMS Securities Litigation--In re VMS Limited Partnership Securities Litigation, 26 F.3d 50 (7th Cir.1994)--in characterizing the California Investors' state claims as "disguised estoppel" claims rather than unreleased, post-judgment claims. In that case, the plaintiff (Berger) relied upon statements from one defendant (CIGNA) regarding the scope of the class action in making his decision to participate in the class settlement. Id. at 50-51.
 
 
 41
 When questioned by Berger, the CIGNA representative informed Berger that the class settlement only pertained to claims regarding the annual financial planning fees Berger paid to CIGNA. Id. The district court, however, found that the clear terms of the class notice and the subsequent settlement agreement barred an "unsuitable investment" cause of action that Berger later tried to adjudicate in an arbitration proceeding. Id.
 
 
 42
 On appeal, this court held that Berger's "fraudulent misrepresentation" argument--that the CIGNA representative fraudulently induced him to participate in the class settlement by advising him that the class settlement only involved claims regarding the financial planning fees--was really an estoppel claim intended to circumvent the class settlement agreement. Id. at 51. In making this determination, we found it significant that the class notice was clear and that it was inherently unreasonable for Berger to rely on the advice of the CIGNA representative, a nonlawyer, who lacked any authority to enforce the settlement agreement. Id. at 52. As such, we held that Berger was bound by the class settlement agreement. Id. at 50-52.
 
 
 43
 The trial courts below used our opinion, as well as Judge Conlon's reasoning in another VMS Securities Litigation decision--In re VMS Securities Litigation, No. 89 C 9448, 1994 WL 380634, at * 1 (N.D.Ill. July 18, 1994) (refusing to enjoin a Michigan state court action because Prudential's attempt to do so was premature in light of plaintiffs' vague complaint)[3]--to formulate a two-factor test for determining whether the California Investors' claims were merely estoppel claims in disguise. These factors are (1) whether the complaint alleges that the class members reasonably relied on the legal advice of the defendant and (2) whether the alleged damages are equal to the difference between the amount plaintiffs could have received had they opted out of the settlement less the amount they actually received via the settlement. In re VMS Sec. Litig., 1995 WL 317085, at * 4; In re VMS Ltd. Partnership Sec. Litig., 1995 WL 355719, at * 2.
 
 
 44
 Applying these tests, the district court in both actions properly characterized the California Investors' state claims as "disguised" or "camouflaged" estoppel claims. The language in the California Complaint satisfies the first factor--the investors plainly allege that they reasonably relied upon Prudential's advice in deciding to participate in the prior class action settlements. California Complaint, paras. 14, 34, 39, & 43.
 
 
 45
 The second factor is also met because the California Complaint seeks damages "based on the amount of [the Investors'] original investment less any amount recovered in the prior class actions, plus prejudgment interest." California Complaint, para. 47. It is obvious from their complaint that the California Investors were attempting to evade the final judgments issued by the district court below; they were trying to recover damages they might have received had they not participated in the class action.
 
 
 46
 The federal district judges had "both the authority and the responsibility to protect [their] judgments" and prevent the California Investors from circumventing the class settlement agreements. In re VMS Sec. Litig., 1995 WL 317085, at * 4.
 
 
 47
 Finally, the California Investors' belated attempt to invoke the Anti-Injunction Act is of no consolation here. The Anti-Injunction Act provides:
 
 
 48
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 49
 28 U.S.C. § 2283. In the proceedings below, the California Investors failed to assert that the Act prohibited the district court from enjoining the California class action.
 
 
 50
 We reject the investors' lame assertion that they could not have waived the Anti-Injunction argument because Prudential, by seeking injunctive relief, "framed the issue" below. It is precisely because Prudential sought injunctive relief in its motions to enforce the final judgments (charging that the "California Action constitutes an impermissible 'end run' around the settlement ... and is properly enjoined as such") (emphasis added) that the California Investors were required to assert the Anti-Injunction Act at that time in order to preserve the issue for appeal. Because they failed to raise this argument in the district court, and they made no showing of plain error, the California Investors waived appellate review of the issue.[4] Johnson by Johnson v. Duneland Sch. Corp., 92 F.3d 554, 557 (7th Cir.1996); see Sac and Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir.) (refusing to review defendants' Anti-Injunction Act argument on appeal because they did not raise the Act's applicability in the district court proceedings nor did they show manifest error), cert. denied, --- U.S. ----, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995); Airlines Reporting Corp. v. Barry, 825 F.2d 1220, 1224-25 (8th Cir.1987) (same).
 
 
 51
 C. Merits of the California Investors' Claims
 
 
 52
 Finally, we briefly address the California Investors' appeal and Prudential's cross-appeal regarding the legal merits of the California claims. In its motions to enforce the final judgments, Prudential sought declarations that the California Investors' claims were legally without merit. In a footnote, the VMS Funds court summarily declined to rule on the merits of the California claims. The VMS Partnership court, however, implicitly determined that the California claims were without legal merit by granting Prudential's motion to enforce the final judgment in its entirety.[5]
 
 
 53
 Because the court in both actions enjoined the California suit, no controversy remained regarding the merits of the California claims. Once the action was enjoined, the district court's adjudication of the legal sufficiency of the claims served no useful purpose because it had no effect on the ultimate outcome of this litigation. As such, the VMS Partnership court erred to the extent[6] that it determined that the California claims were without merit.
 
 
 54
 We look to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), for guidance regarding the propriety of issuing a declaratory judgment. The Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This statute, however, "does not dispense with the Article III case or controversy requirement ..., nor does it supply the court with subject matter jurisdiction." Nationwide Ins. v. Zavalis, 52 F.3d 689, 692 (7th Cir.1995) (citations omitted).
 
 
 55
 Even when a district court has subject matter jurisdiction, it is not required to declare the rights and relations of parties. Id. (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942)); Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 747 (7th Cir.1987) ("It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."); see Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 56, 113 S.Ct. 2485, 2495, 125 L.Ed.2d 38 (1993). Although the Act grants the district court "wide discretion" to decide whether or not to use its authority to issue declaratory judgments, this circuit has advocated the use of the de novo standard of review.[7] Nationwide Ins., 52 F.3d at 692; see Tempco Elec. Heater Corp., 819 F.2d at 749 ("[T]he decision whether to allow a declaratory judgment action to proceed is one which calls for 'discretion hardened by experience into rule.' ").
 
 
 56
 We have already determined that the VMS Funds and VMS Partnership judges maintained jurisdiction over the enforcement of the federal class actions and properly removed the California action pursuant to the All Writs Act. Thus, we need only decide whether there was an actual controversy ripe for decision. Oneida Tribe of Indians v. State of Wisc., 951 F.2d 757, 759-60 (7th Cir.1991). An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 
 
 57
 In this case, there was no "sufficient immediacy" warranting the court to address the merits of the California claims. The present situation illustrates this lack of urgency: the VMS Funds and VMS Partnership final judgments have been fully enforced and the California Investors cannot proceed with their state court suit. Thus, the issuance of a declaratory judgment would serve no useful purpose. See Tempco Elec. Heater Corp., 819 F.2d at 749; see also NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 579 (7th Cir.1994). If this court determined that the California claims were insufficient as a matter of law,[8] that decision would not affect the outcome of this matter. The outcome of other cases, however, might be influenced by our final judgment due to the preclusion principles of res judicata and collateral estoppel. As such, prudence commands our refusal to rule on the legal sufficiency of the "fraudulent misrepresentation" and "breach of fiduciary duty" California claims in order to avoid issuing an advisory opinion.
 
 
 58
 We AFFIRM the district court's decisions to enforce their final judgments by enjoining the California Investors from proceeding with their California class action, and we VACATE in part the order of the VMS Partnership decision that could be read to determine that the California claims were not meritorious.
 
 
 
 *
 The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 At oral argument, the California Investors asserted that they were not objecting to the class notice procedures; rather, their claims were based entirely upon California state law duties that Prudential allegedly breached in its dealings with the Investors during the opt-out period. Nonetheless, these claims arose out of the settlement agreement process, in which the district court had expressly retained exclusive jurisdiction
 
 
 [2]
 In fact, the judge in the VMS Partnership action did employ this power--Judge Zagel adjudicated a dispute regarding the potential misleading nature of communications made to class members regarding the proposed settlement agreement. See In re VMS Ltd. Partnership Sec. Litig., 138 F.R.D. 102 (N.D.Ill.1991)
 
 
 [3]
 Judge Conlon distinguished this decision in her opinion below on grounds that the Michigan complaint, on its face, failed "to allege reasonable reliance" and because its "uncertain damage request made it unclear if [the] state court action asserted [an] indirect estoppel claim." In re VMS Sec. Litig., 1995 WL 317085, at * 4
 
 
 [4]
 We need only briefly address the California Investors' argument regarding the inapplicability of the Anti-Injunction Act's "relitigation exception" to this case. In its brief, Prudential aptly noted that the California Investors "turn[ed] a blind eye" to the "in aid of jurisdiction" exception to the Anti-Injunction Act, instead choosing to address only the "relitigation exception." (See California Investors' Brief at 15-18; Prudential's Brief at 29.) Assuming, arguendo, that the California Investors raised their Anti-Injunction Act argument below (and thus preserved it for appellate review), the district judges' injunctions would likely be proper under the "in aid of jurisdiction" exception. Clearly, the court in both the VMS Funds and VMS Partnership actions expressly retained jurisdiction to enforce and protect the final judgments. Thus, either the All Writs Act or the "in aid of jurisdiction" exception to the Anti-Injunction Act would provide the judges with the power to enforce their prior judgments via injunctions. See Agent Orange I, 996 F.2d at 1431-32
 
 
 [5]
 Although the VMS Partnership court never explicitly stated that it granted Prudential declaratory relief, it proclaimed that the "California Investors' reliance upon ... Prudential's representations with regard to opting out of the class was unreasonable." In re VMS Ltd. Partnership Sec. Litig., 1995 WL 355719, at * 3
 
 
 [6]
 Prudential correctly asserts that the VMS Funds decision provided complete relief by enjoining the California action in its entirety, and Prudential admits that it filed its cross-appeal "as a precautionary matter to preserve its right to enlarge the [VMS Funds] court's judgment with respect to the declaratory relief it sought." (Prudential's Brief, at 17 n. 4.)
 
 
 [7]
 In Nationwide Insurance, we briefly addressed the "simmering circuit split" on the appropriate amount of deference to employ in reviewing a district court's utilization of its declaratory power. See Nationwide Ins., 52 F.3d at 692 n. 2. We ultimately adopted the de novo standard of review in the interest of consistency. Id. at 692
 
 
 [8]
 Other cases in this litigation have suggested that the California Investors could not have reasonably relied upon Prudential's advice during the opt-out period--see, e.g., In re VMS Ltd. Partnership Sec. Litig., 26 F.3d at 52 ("When perplexed by terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer."); In re VMS Sec. Litig., No. 89 C 9448, 1992 WL 368029, at * 2 (N.D.Ill. Nov.30, 1992) (Conlon, J.) ("Once they knew that there was a legal proceeding pending, it was no longer reasonable to continue taking legal or investment advice from Prudential or any of its agents.")--but we need not reach that determination here in order to grant Prudential complete relief