FIDELITY FINANCIAL, Plaintiff,

v.

Danny ROBINSON, et al., Defendants.

Danny ROBINSON, et al.,
Counterclaimant,

v.

FIDELITY FINANCIAL SERVICES, INC.
Regency Subaru, and Balboa Insurance
Company, Counterdefendants and
Third–Party Defendants.

Civil Action No. 3:96CV922LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

May 2, 1997.

Ross F. Bass, Jr., William C. Brabec, Phelps, Dunbar, Jackson, MS, Stephen E. Bardner, Young, Williams, Henderson, Fuselier, Jackson, MS, for Plaintiff.

Dennis C. Sweet, III, Langston, Frazer, Sweet & Freese, Jackson, MS, for Defendant.

TOM S. LEE, Chief Judge.

*MEMORANDUM OPINION
AND ORDER*

Plaintiff/counterdefendant Fidelity Financial (Fidelity) has filed in this cause a motion to dismiss counterclaim or, in the alternative, to stay the counterclaim. Defendants/counter-plaintiffs Danny and Felicia Robinson have responded with a motion to remand and to dissolve or modify injunction, and have further moved to stay any ruling on Fidelity's motion to dismiss or stay until such time as the court has decided the motion to remand. The court has considered the parties' memoranda of authorities, together with attachments, submitted in connection with these motions, and concludes, for reasons which follow, that the motion to remand should be granted. The court therefore will not proceed with consideration of Fidelity's motion to dismiss or stay.

A full explanation of the circumstances which have resulted in this case being before the court will facilitate the court's discussion

of the issues raised by the motions. In January 1996, a Fidelity customer, Barbara Thomas, filed suit against Fidelity in this court alleging a number of claims relating to what Thomas alleged was Fidelity's wrongful purchase of collateral protection insurance, or "CPI," ostensibly on Thomas's behalf.[1] *Barbara Thomas v. Fidelity Financial Services, Inc., et al.,* Civil Action No. 3:96CV35LN. Thomas included class allegations in her complaint and soon after she filed suit, Thomas, through her counsel, along with Fidelity, through its counsel, submitted to the court an agreed order, prepared and signed by the parties' counsel, by which the parties agreed to the temporary certification of a "settlement class action," with the class consisting of "[a]ll persons who have or had loans with Fidelity ... secured by personal property who were charged for collateral protection insurance and related charges." The order specified that this "certification" was for the "limited purpose of Plaintiff and Fidelity entering negotiations for possible settlement of this action," and reiterated therein:

> This Court's preliminary and temporary certification of the class is for the limited purpose of allowing Plaintiff and Fidelity to enter into settlement negotiations. If a settlement is reached, the Court will then schedule a fairness hearing, at which time the Court will hear arguments of counsel and any objection of class members to the proposed settlement, subsequent to which this Court will render a final decision regarding approval of the settlement and certification of the settlement class.

The order further provided, as is pertinent here, that all members of the temporary class were enjoined "from commencing new actions against Fidelity" relating to the allegations of the *Thomas* action. The parties' agreed order was signed and entered by this court on May 3, 1996 and by its terms, was to expire in September 1996. However, it was extended, first to December 3, 1996, and later to March 17, 1997, based on representations by the parties that they were engaged

in continuous "meaningful settlement negotiations."*

In the meantime, on October 23, 1997, at a time when the *Thomas* injunction was in effect, Fidelity filed a collection suit against Danny and Felicia Robinson in the County Court of Hinds County seeking to recover a deficiency judgment on the Robinson's automobile loan following Fidelity's repossession and sale of the vehicle upon Robinson's default. The Robinsons, who had been given no notice of the *Thomas* class or the injunction, timely answered and asserted against Fidelity a counterclaim, as well as a third-party complaint against Regency Subaru and Balboa Insurance company, all relating to the forced-placement of CPI in connection with the Robinson's loan from Fidelity. Upon the filing of the Robinson's counterclaim, Fidelity removed the case to this court asserting as the sole authority for its doing so the All Writs Act, 28 U.S.C. § 1651. After removal, Fidelity filed its motion to dismiss, or in the alternative, to stay the Robinson's counterclaim, arguing that the counterclaim contravenes the *Thomas* injunction. The Robinsons responded by moving to remand.

Following the completion of the parties' briefing on their motions, the plaintiff in *Thomas* moved, and the court allowed her to voluntarily dismiss her suit by order entered March 29, 1997.

However, just before that order was entered, a virtually identical suit was filed in the Hattiesburg Division of this District by several other Fidelity customers, *Coats v. Fidelity Financial Servs., Inc.,* No. 2:97CV116PG, and Judge Charles Pickering immediately signed an agreed order on March 27, 1997 certifying a temporary settlement class in the *Coats* case. His order was identical to that which was entered by the undersigned in *Thomas,* and is to remain in effect until July 1, 1997.

By their motion to remand, the Robinsons vigorously challenge the propriety of Fidelity's removal, insisting that the All Writs Act

---

1. Such suits as this have become quite popular in the wake of a $38,000,000 punitive damages verdict returned by a Jones County jury against Trustmark National Bank in January of 1995 in a suit challenging Trustmark's forced placement of CPI. That verdict was ultimately reduced to $5,000,000.

does not provide a basis for the exercise of removal jurisdiction over this case and that there otherwise exists no basis for jurisdiction in this court, and hence, no basis for Fidelity's removal to this court. In response, Fidelity acknowledges that there is no diversity of citizenship to support federal jurisdiction over this case under 28 U.S.C. § 1332. And it concedes, implicitly if not explicitly, that the state court pleadings raise no federal question that would support an exercise of federal jurisdiction under § 1331. For these reasons, Fidelity has not purported to justify its removal under 28 U.S.C. § 1441. Nevertheless, it maintains that removal jurisdiction exists which this court can and should exercise in order to give effect to the *Thomas/Coats* injunction against prosecution of CPI claims against Fidelity.

The All Writs Acts states:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law.

28 U.S.C. § 1651. The notion that this Act might serve as a vehicle for removal is of relatively recent vintage, and there have been few cases addressing the issue. In *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989), the earliest reported decision of which this court is aware in which removal was allowed under the authority of the All Writs Act, the court rejected the argument that the removal statutes were the exclusive source of removal jurisdiction and held that "residual jurisdictional authority" derived from the All Writs Act exists to permit removal in "exceptional cases." *Id.* at 864. The court concluded that the plaintiffs in the removed action—which was a suit to condemn certain property which the City had previously agreed in federal court litigation would be condemned for public housing—were in a position to frustrate the implementation of a previously-entered federal consent decree which was intended to remedy the condition of unconstitutionally segregated public housing in the City of Yonkers. The court concluded that the City could, and likely should have invoked the court's residual jurisdiction under the All Writs Act by filing its condemnation suit in federal court in the first place since the City was, in effect, pursuing the condemnation proceedings at the behest of the federal court by virtue of the consent decree. In its view, though, as a practical matter, it was no less necessary or appropriate to assert removal jurisdiction over the case. The court explained:

> [W]ere we to decide that removal was improper under the All Write Act, the state court would be faced with a situation in which any order it issued that was inconsistent with the Consent Decree would be subject to the injunctive powers of the federal court under the Anti–Injunction Act. *See* 28 U.S.C.§ 2283 (federal court may not grant injunction against state court "except as expressly authorized by ... Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"); ... Use of the All Writs Act in this case to effectuate removal thus seems to us to be a less drastic, and therefore preferable, result.

*Id.* at 864.

Subsequently, in *In re Agent Orange Product Liability Litigation*, 996 F.2d 1425 (2d Cir.1993), *cert. denied sub nom.*, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994), the Second Circuit again permitted an All Writs Act removal, but in a class-action context. *Agent Orange* involved efforts by two groups of veterans to sue manufacturers of Agent Orange in state court in Texas despite an earlier settlement of a class action (or multidistrict litigation) brought against Agent Orange manufacturers in federal court in the Eastern District of New York. That settlement agreement, which had received judicial approval and of which notice had been given to class members, forever enjoined class members from instituting or maintaining an action against the defendant manufacturers based on exposure to Agent Orange. *Id.* at 1429. The plaintiffs in the subsequent Texas lawsuits were within the defined class covered by the settlement and had not opted out of the settlement, *id.*, so the defendants in the cases removed the suits to the Texas district courts. The suits were

then transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of New York. *Id.* at 1430. That court denied plaintiffs' motion to remand, finding jurisdiction proper under the All Writs Act, and dismissed the plaintiffs' claims as barred by the prior settlement and injunction. On appeal, the Second Circuit affirmed the district court's ruling, first explaining that

[a] district court, in exceptional circumstances, may use its All Writs authority to remove an otherwise unremovable state court case in order to "effectuate and prevent the frustration of orders it previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).

*Id.* at 1431. The court concluded that exceptional circumstances were present, reasoning as follows:

If Agent Orange victims were allowed to maintain separate actions in state court, the deleterious effect on the *Agent Orange I* settlement mechanism would be substantial. The parties to the settlement implicitly recognized this when they agreed that all future suits by class members would be permanently barred. It is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the *Agent Orange I* class action and settlement. The court best situated to make this determination is the court that approved the settlement and entered the judgment enforcing it. Removal in the instant case was an appropriate use of federal power under 28 U.S.C. § 1651. *See United States v. City of New York,* 972 F.2d 464, 469 (2d Cir.1992); *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855, 863–64 (2d Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989). In so holding, we are not unmindful of the fact that the All Writs Act is not a jurisdictional blank check which district courts may use whenever they deem it advisable. "Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985).

*Id.* The court decided that the district court had properly exercised its discretion in assuming jurisdiction over the cases since in so doing, it was not merely determining the preclusive effect of a prior final judgment, but rather "was enforcing an explicit, ongoing order against relitigation of matters it already had decided, and guarding the integrity of its rulings in complex multidistrict litigation over which it had retained jurisdiction." *Id.*

Similarly, in *In re VMS Securities Litigation v. Prudential Securities, Inc.,* 103 F.3d 1317 (7th Cir.1996), final judgment orders were entered by two district judges approving two class action settlements of securities fraud lawsuits against Prudential Securities. In each order, the judge explicitly retained jurisdiction over the implementation and enforcement of the settlements. *Id.* at 1320. Thereafter, a group of class members who had been given notice of the settlements and had not elected to opt out, filed suit against Prudential in a California state court alleging that Prudential had fraudulently induced them to participate in the class action settlements. Prudential asked the district judges to enforce their final judgment orders by enjoining the California lawsuit. Both judges granted Prudential's requests, finding that the California plaintiffs were attempting to "evade" or make an "end run" around their final judgments. On appeal, the primary issue, as framed by the Seventh Circuit, was whether the federal court had jurisdiction over the California plaintiffs' claims. The court concluded that it did, because, "when a lower court reserves its power to enforce a settlement, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist." *Id.* at 1321 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 378–82, 114 S.Ct. 1673, 1676–77, 128 L.Ed.2d 391 (1994)). Then the court, after discussing the Second Circuit's opinion in *In re Agent Orange,* opined:

Because the district court retained jurisdiction over both actions, it could properly remove the California Investors' claims from California state court pursuant to the All Writs Act. . . . Applying the Second Circuit's sound reasoning from Agent Orange I to this case leads us to the same conclusion that allowing the California Investors to maintain their separate actions in state court would have a substantial "deleterious effect" on the . . . settlement mechanisms. . . .

In reaching this conclusion, we do not suggest that a court may Use the All Writs Act as a "jurisdictional blank check" to use whenever it deems it advisable. *See id.* The "exceptional circumstances" present here and in *Agent Orange I*, however, warrant this proper exercise of judicial discretion. *Id.* Thus, in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to remove and enjoin the prosecution of subsequent state court claims in order to enforce its ongoing orders against relitigation and to guard the integrity of its prior rulings over which it had expressly retained jurisdiction. *See id.*

Clearly, the use of the All Writs Act for removal in *Yonkers, Agent Orange* and *VMS Securities* was based solely on a perceived need to enforce, and hence protect judgments previously entered by the courts. The propriety of exercising "removal jurisdiction" under the All Write Act for that purpose has been recognized in other cases, as well. *See Sable v. General Motors Corp.,* 90 F.3d 171, 175 (6th Cir.1996) (exercise of removal jurisdiction proper under All Writs Act where necessary to protect federal consent agreements from conflicting state orders; relief requested by plaintiffs in state court suit would "seriously interfere with provisions in" prior consent judgments entered by the federal court); *Harbor Venture, Inc. v. Nichols,* 934 F.Supp. 322, 323 (E.D.Mo.1996) (where court's earlier decree incorporated settlement agreement, removal of subsequent case under authority of All Writs Act was approved; "this court has the inherent power, that is, automatic ancillary jurisdiction, to enforce an agreement when the terms of the settlement have been included in the de-

cree"); *United States v. American Society of Composers, Authors and Publishers,* 832 F.Supp. 82, 87 (*S.D.N.Y.* 1993) (observing in dicta that "sufficient authority exists in this Circuit empowering us to enjoin and remove . . . a proceeding under the All Writs Act" based on the recognition of a court's exclusive jurisdiction to decide claims governed by its own consent decree); *see also Davis v. Glanton,* 107 F.3d 1044, 1047 n. 4 (3d Cir. 1997) ("a district court, in exceptional circumstances, may use its authority under the [All Writs] Act to remove an otherwise unremovable state court action to 'prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.' "); *Nowling v. Aero Servs. Int'l, Inc.,* 734 F.Supp. 733, 738 (E.D.La.1990) (recognizing authority of federal courts to remove under All Writs Act "if it is necessary to avoid frustrating the implementation of the orders issued in [an] earlier case").

In a few cases, including one from this district, courts have gone further and permitted removal under the All Writs Act even prior to the entry of a settlement order or consent judgment in the potentially affected class or class-type federal action. The court in *Neuman v. Goldberg,* 159 B.R. 681 (S.D.N.Y.1993), claimed removal authority under the All Writs Act over a state court action which, in its view, "threaten[ed] to disrupt the orderly resolution of . . . consolidated multidistrict litigation before [it]." *Id.* at 685–86. There, "the putative plaintiff class in [the state-court suit] [was] the same as the putative plaintiff class [in the federal action]," and "[t]he allegations in the two actions [did] not merely overlap but, in many instances, [were] verbatim." *Id.* at 686. The court observed that under those circumstances, it clearly had the authority to enjoin the state-court action, but, like the Second Circuit in Yonkers, was persuaded that "retain[ing] jurisdiction over a case that ha[d] already been voluntarily removed" was a " 'less drastic, and therefore preferable' remedy". *Id.*

In another case, *Holland v. New Jersey Department of Corrections,* Nos. 93–1683, 94–2391, 94–3087, 1994 WL 507801 (D.N.J. Sept.14, 1994), the court noted the absence of

diversity or federal question jurisdiction and the lack of removal jurisdiction premised on the removal statutes, but, citing *Yonkers* and *In re Agent Orange*, nevertheless concluded that it could "invoke the All Writs Act to approve the removal of [a state-court] action notwithstanding the existence of the federal removal provisions." *Id.* at *5. The *Holland* federal lawsuit was a "putative class action" in which the plaintiffs asserted claims of rampant racial harassment, discrimination and retaliation by the New Jersey Department of Corrections. The court in the case had encouraged the parties to mediate their differences and ultimately entered an anti-retaliation order which prohibited any retaliation against the *Holland* plaintiffs. While the federal suit was pending, Lutz, a white sergeant and defendant in the *Holland* case, filed suit in state court against Gregg, one of the *Holland* plaintiffs, alleging that criminal harassment charges which Gregg had earlier initiated against him constituted malicious prosecution and abuse of process. Gregg responded by removing the case to federal court, where he filed a counterclaim charging that Lutz's suit was brought in retaliation for Gregg's participation in the *Holland* case. In response to Lutz's motion to remand, the court concluded that "the requisite exceptional circumstances" were present "to warrant the Court's exercise of the All Writs power to remove the Lutz case from state court," because of "the potential ... for conflicting judgments in the state and federal actions," *id.* at *6, because the continued prosecution of Lutz's claims in state court would violate, "not to mention frustrate the implementation of," the anti-retaliation order if Gregg's allegations of retaliation were true, *id.*, and because "the [state-court] case [could] only hinder, rather than advance, the efforts of the mediator and th[e] [federal] court to resolve all issues in the *Holland* case," *id.*

In reliance on *In re Agent Orange*, Judge Walter Gex in *Holmes v. Trustmark National Bank*, No. 1:95cv323GR, 1996 WL 904513 (S.D.Miss.1996), permitted removal under the All Writs Act by Trustmark National Bank, which, like Fidelity, upon filing a collection suit in state court against its debtor, Hammack, was confronted with a counterclaim by Hammack for breach of contract and fraud relating to Trustmark's placement of CPI. Judge Gex, who had previously certified a mandatory class action under Rule 23(b)(1) which encompassed Hammack's CPI claim, quoted from the Second Circuit's *Agent Orange* decision, and concluded, without elaboration, that while "the facts in *Agent Orange* are distinguishable, it is clear that the Court has authority to exercise jurisdiction over a lawsuit removed from state court by Trustmark when the claims asserted against Trustmark are class claims." *Holmes*, slip op. at 22.

There are no Fifth Circuit cases addressing whether, or in what circumstances reliance on the All Writs Act for removal authority can be justified. However, even accepting as true the proposition espoused in these cases, *i.e.*, that there are "exceptional circumstances" which permit removal to be accomplished via the All Writs Act even though the court otherwise lacks a predicate jurisdictional basis over the removed case, *i.e.*, diversity or federal question jurisdiction, and further assuming that the procedural requisites for removal prescribed by the removal statutes would simply be irrelevant for a removal effected under the All Writs Act, this court, after due consideration, concludes without difficulty that the Act should not provide a vehicle for removal in this case. As the Second Circuit observed in *Agent Orange*, "the All Writs Act is not a jurisdictional blank check which district courts may use whenever they deem it advisable." Its use is only appropriate to "effectuate and prevent the frustration of orders it previously issued in its exercise of jurisdiction otherwise obtained." *Id.* (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)). And even assuming that the cited cases did present "exceptional circumstances" warranting the exercise of All Writs removal jurisdiction, this case does not. In this case, the only basis upon which this court Right claim jurisdiction, and hence authority, over Robinson's counterclaim against Fidelity via the All Writs Act would derive, in the first instance, from the court's "temporary" or "provisional" certification of a settlement class and injunction against the "temporary" class

members' pursuing litigation against Fidelity. While the Fifth Circuit has explicitly condoned the recognition of a "tentative or temporary settlement class for the approval or disapproval of a pre-certification settlement," *In re Beef Industry Antitrust Litigation,* 607 F.2d 167, 173 (5th Cir.1979), here, there was no pre-certification settlement, and though nearly a full year has passed since this court first certified the temporary class for settlement purposes, there has been no settlement and the court has no basis for concluding or predicting that it is likely one will be reached. There still exists only the possibility of settlement. If the parties in *Coats* are ultimately unable to reach a settlement, then the injunction issued in that case will naturally dissolve and the former "class" members will be free to pursue their claims against the defendant in any appropriate forum.[2] Added to that is the fact that there has, as yet, been no definitive ruling by the court that certification of a plaintiff class would even be proper. Indeed, by agreeing to provisional class certification for settlement purposes, the parties in *Thomas,* and now *Coats,* have deftly avoided judicial evaluation of whether class certification would have been (or would be) sustainable by reference to the Rule 23 criteria.[3] Moreover, even if the parties in *Coats* were to settle, their settlement might not receive judicial approval, and it is at least arguable that even if the settlement terms were otherwise acceptable, the court might conclude in the end that class treatment was not in order or that the class ought to be redefined in such a manner as to exclude the claims of certain plaintiffs.[4] Furthermore, and contrary to Fidelity's apparent supposition, neither the undersigned nor Judge Pickering has purported to certify a mandatory, no-opt-out class under Rule 23(b)(1) or (b)(2), or even intimated (so far as the undersigned is aware) that such a class would be proper. Rather, both the undersigned and Judge Pickering have merely signed agreed orders certifying a temporary settlement class. It is possible, therefore, that unless a more specific intention is expressed by Judge Pickering in the *Coats* case, even if a settlement is reached and approved, the Robinsons might have the opportunity to "opt out" in the end anyway, and at least at that time, their pursuit of the counterclaim against Fidelity would do no violence to any order of this court.

The court's point, of course, is that its jurisdiction over the Robinson's counterclaim against Fidelity, being coextensive with its jurisdiction over the class, is at this time only temporary. If no settlement is reached in *Coats,* or if the court were to refuse to approve any settlement or find it appropriate to limit the class or the class-based claims, or if the plaintiffs were given the opportunity to, and elected to opt out of the class and class settlement, then this court's jurisdiction over the Robinson's claims flowing from the *Thomas/Coats* orders would simply cease to exist. Given the temporary nature of the *Thomas/Coats* class certification and injunction, it thus can easily be seen that even if it were authorized to do so, the court would be ill-advised to allow removal, especially when one considers that *if* it would be proper under the All Writs Act and/or the Anti-Injunction Act[5] to enjoin the Robinsons from pursuing their counterclaim, the court could enter such an injunction without the necessity of removing the case to do so. *See Rob-*

---

**2.** The potential impermanence of the settlement class action has been explicitly recognized by class counsel, John Sims and John Deakle, who have written to members of the plaintiff class informing them of the class action and encouraging them to pursue their claims on an individual basis "[i]n the event we are not successful in regard to settling the class."

**3.** The Fifth Circuit has suggested that in reaching a proposed class settlement, the representative parties in a temporary settlement class may "compromise class issues." *In re Beef Industry Antitrust Litigation,* 607 F.2d at 177 (quoting 3 Newberg, *Class Actions* § 5570c at 476.) However, it has appeared to also suggest that the court should take the Rule 23 class certification criteria into account in evaluating the proposed class settlement. *See In re Asbestos Litigation,* 90 F.3d 963 (5th Cir.1996) ("courts should consider the settlement in determining whether Rule 23 prerequisites are satisfied").

**4.** In this regard, it is recalled that both the *Thomas* and *Coats* orders provide that "[i]f a settlement is reached, the Court will then schedule a fairness hearing ... subsequent to which this Court will render a *final decision* regarding approval of the settlement *and certification of the settlement class.*" (Emphasis added).

**5.** The Anti-Injunction Act allows a federal court to enjoin ongoing state proceedings "where expressly authorized by act of Congress, or where

*ertson v. Western Heritage Ins. Co.*, No. 3:96–CV–2044–P, 1996 WL 722078 (N.D.Tex. Dec.5, 1996) (noting that the judge whose order was said to be threatened by the continued prosecution of the state court action was not incapable of protecting his order without resorting to removal, for " 'he [could] always enjoin prosecution of the state-court proceeding' under the relitigation exception to the Anti–Injunction Act"); [6] *see also In re VMS*, 103 F.3d at 1326 n. 4 ("either the All Writs Act or the 'in aid of jurisdiction' exception to the Anti–Injunction Act would provide the judges with the power to enforce their prior judgments via injunctions"). Thus, even though the court is of the opinion that this case ought to be remanded, there is nothing to prevent Fidelity from requesting that Judge Pickering enjoin the Robinson's state-court claim in order to protect and effectuate the *Coats* injunction.[7]

In the end, having considered all of the foregoing facts, the court is persuaded that it is neither necessary nor advisable in the circumstances of this case for this court to exercise removal jurisdiction under the All Writs Act. Accordingly, it is ordered that the Robinson's motion to remand is granted.

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

6. In *Robertson v. Western Heritage Insurance Co.*, No. 3:96–CV–2044–P, 1996 WL 722078 (N.D.Tex. Dec.5, 1996), the court, after noting the absence of Fifth Circuit cases permitting use of the All Writs Act for removal purposes, held that even under the rationale of cases such as *In re Agent Orange* and *Yonkers,* removal would not be warranted merely because the defendant asserts a res judicata defense because of a prior federal court order. The court went on to say:

Finally, even if the court believed that under the law of this circuit it could use the All Writs Act to remove this case, an issue which the Court does not address, it would not choose to exercise its discretion to do so. *See In re United States in Matter of Order Authorizing Use of a Pen Register*, 538 F.2d 956, 961 (2d Cir.1976) ("[The All Writs Act], even if found to be applicable, is entirely permissive in nature; it in no way mandates a particular result or the entry of a particular order."), *rev'd on other grounds sub nom. United States v. New York*

*Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).... Further, since removal deprives the state court of an action properly before it, removal raises significant federalism concerns which caution against removal. *Id.* at *6.

7. Another factor which has influenced, though by no means decisively, the court's view of the motion to remand is the fact that Fidelity commenced this action against Robinson *in state court* at a time when it was well aware of the *Thomas* injunction. And even assuming that its only goal in filing the lawsuit against the Robinsons when it did was merely to avoid a limitations bar (and this is pure supposition by the court), it could have voluntarily stayed *its* claim against the Robinsons and thereby effectively achieved the same result that it now seeks in this court. That is to say, it is hard to overlook the undeniable fact that it is Fidelity's actions which placed the Robinsons in the position of asserting their counterclaim, which obviously is a compulsory counterclaim, while the injunction was pending.