**Rudy H. SIMS, Jr., J.W. King, Jerry Johnston, B.L. Chain, Frank Perkins, J.L. Patton and Mildred R. Tootle, Plaintiffs,**

v.

**SHELL OIL COMPANY, Defendant.**

**No. Civ.A. 3:98–CV–282WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 31, 1999.

Sam S. Thomas, Heidelberg & Woodliff, Jackson, MS, John F. Perry, III, Langston, Langston, Michael, Bowen & Tucker, Booneville, MS, H. Mitchell Cowan, Watkins Ludlam Winter & Stennis, P.A., Jackson, MS, Ernest G. Taylor, Jr., Ernest G. Taylor, Jr., Attorney, Jackson, MS, Jeffery P. Reynolds, Jeffery P. Reynolds, P.A., Jackson, MS, for Plaintiffs.

Charles Clark, William F. Goodman, Jr.,Paul H. Stephenson, III, Watkins & Eager, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of plaintiffs, Rudy H. Sims, Jr., J.W. King, Jerry

Johnston, Bobby L. Chain, Frank Perkins, J.L. Patton and Mildred R. Tootle, brought pursuant to Title 28 U.S.C. § 1447,[1] to remand this civil action to the Circuit Court of Jones County, Mississippi where it originated. The defendant, Shell Oil Company ("Shell"), opposes plaintiffs' motion, arguing that this court has jurisdiction over this dispute under the All Writs Act, Title 28 U.S.C. § 1651,[2] and that removal to this court was proper. Defendant further argues, as an alternative ground for denying plaintiffs' motion, that federal diversity jurisdiction here exists under Title 28 U.S.C. § 1332,[3] since, according to the defendant, plaintiffs, Sims and Patton, were improperly and fraudulently joined by plaintiffs in an effort to defeat this court's diversity of citizenship jurisdiction.

At an earlier hearing on this matter, this court announced from the bench that it was inclined to deny plaintiffs' motion to remand. After further analysis of the applicable law and facts, as well as the submissions of counsel, this court is now persuaded that plaintiffs' motion to remand should be granted for the reasons which follow.

## I. *BACKGROUND*

Plaintiffs, the alleged owners of oil and gas royalty interests of certain wells located in Rankin County, Mississippi, originally filed this civil action in the Circuit Court of Jones County, Mississippi, against Shell Oil Company alleging: (1) breach of lease agreements between plaintiffs and Shell; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment and the imposition of a constructive trust against royalty money wrongfully retained by Shell; and (4) punitive damages for Shell's charged intentional, callous and malicious conduct and reckless disregard for the rights of the plaintiffs. Defendant, Shell Oil Company, while denying plaintiffs' allegations, subsequently removed plaintiffs' lawsuit to this court based upon the grounds previously described.

Related to this litigation is a class action lawsuit styled *Piney Woods Country Life School, et al. v. Shell Oil Co.,* No. J74–307W (S.D.Miss.) (hereinafter "Piney Woods"), which began in 1974. An understanding of the scope and history of this litigation is essential for an appreciation of defendant's argument that its removal of this lawsuit from state court to this court was proper under the All Writs Act.

The Piney Woods plaintiffs, claiming that Shell had failed to pay adequate market value royalties beginning in 1973, sued Shell in this court for underpayment of royalties on gas produced and purchased by Shell. On December 27, 1976, the Honorable Judge Dan M. Russell, Jr., of this court tentatively certified and defined the Plaintiff Class in Piney Woods as follows:

> ... all individuals or entities who are royalty owners in the Thomasville, Piney Woods, and Southwest Piney Woods Fields whose gas is being processed through Shell Oil Company's Thomasville plant located at Thomasville, Mississippi, whose claims exceed the jurisdictional amount of $10,000.00 or over.

1. Title 28 U.S.C. § 1447© provides in pertinent part:

   A motion to remand the case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice or removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

2. Title 28 U.S.C. § 1651(a) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

3. Title 28 U.S.C. § 1332 provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
   (1) citizens of different States; ...

On or about September 27, 1977, the Piney Woods class representatives mailed copies of the approved notice to all persons and entities, who, at that time, were within the class. On June 5, 1978, the court ordered the class representatives to forward additional notice to persons and entities who fell within the class definition subsequent to delivery of the first notice. On December 15, 1978, Judge Russell filed an Order finalizing the class certification which had been previously tentatively announced by the December 27, 1976, Order. On October 10, 1985, the Piney Woods plaintiffs moved the court to order additional notice to persons and entities who had fallen within the class definition since the time of the second class notice in 1978. Then, later, in 1986, after the Piney Woods lawsuit had been transferred to the undersigned judge, the undersigned judge, deciding to wait until liability issues had been resolved, refused to issue additional notice and held:

> It is undisputed that notice to class members is appropriate once liability of a defendant has been established. However, the unresolved issues which form the basis for the determination of individual claims for relief in the case *sub judice* convinces this court that notice directed to class members at this point in the litigation is premature. Upon resolution of the pending issues regarding discovery matters, "market value," and the reasonability of processing costs, this Court will readily entertain plaintiffs' motion for proposed notice to class members with reference to the substitution of plaintiffs' heirs, assignees, and the adding of new class members whose claims have, since initial certification, exceeded the $10,000.00 jurisdictional amount.

*See* Memorandum Opinion and Order dated December 29, 1986, p. 17. Not until 1997, after the issue of liability was resolved, was the issue of supplemental notice revisited by this court. On September 17, 1997, this court granted the Piney Woods plaintiffs' request for supplemental notice to prospective plaintiffs whose claims exceeded the jurisdictional amount, but this court concluded that prospective plaintiffs whose claims failed to reach the jurisdictional amount should not be entitled to inclusion in the class.

In the case *sub judice*, defendant argues that the Piney Woods litigation and this lawsuit *sub judice* are inextricably related and would require whatever court to which the lawsuit *sub judice* is assigned to interpret the various orders and decisions of this court during the 23 years of the Piney Woods litigation. As proof of the intertwinement of the two cases and the claims therein, the defendant points to the following language in plaintiffs' Amended Complaint:

> 30. Beginning in 1974 and continuing for a period of over 23 years, Shell has engaged in a deliberate pattern and practice of conduct that was designed to prevent the Royalty Owners from obtaining proper royalties based upon the fair market value of gas produced by Shell. With callous indifference and reckless disregard for the rights of the Royalty Owners, Shell has engaged in litigation practices and conduct that was designed to delay the fair and efficient resolution of the Royalty Owners' claims. Shell's plan and purpose during this 23–year period has been to delay and frustrate the administration of justice, to withhold money rightfully belonging to the Royalty Owners, to convert those funds to its own use and profit and to obfuscate and conceal its wrongful acts.

> 31. Even (sic) since the Federal District Court ruled that Shell had violated its contract by failing to pay royalty at market value rates, Shell has arbitrarily continued to withhold payment and has not even responded to the plaintiffs' May 6 letter requesting payment in accordance with the Court's ruling.

Defendant, relying upon the All Writs Act as authority, argues that this court is

best suited to resolve plaintiff's claims, since this court has a "complete understanding of the class action proceedings in Piney Woods." Furthermore, defendant argues that the claims of the plaintiffs, whose joinder defeats diversity (Sims and Patton), are time barred by the relevant statutes of limitations.

Plaintiffs, on the other hand, argue that Shell's removal of this action to federal court was improper. According to plaintiffs, the state court is a proper forum to decide the issues of this case based upon the Piney Woods precedent.

## II. *ALL WRITS JURISDICTION*

■ The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Title 28 U.S.C. § 1651(a). The United States Supreme Court repeatedly has recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained. *See U.S. v. New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977), citing *Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969); *Price v. Johnston*, 334 U.S. 266, 282, 68 S.Ct. 1049, 1058, 92 L.Ed. 1356 (1948); *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). However, the All Writs Act is not a "jurisdictional blank check" which district courts may use whenever they deem it advisable. *In re Agent Orange Product Liability Litigation*, 996 F.2d 1425, 1431 (2d Cir.1993), *cert. denied* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994). "Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears

inconvenient or less appropriate." *Fidelity Financial v. Robinson*, 971 F.Supp. 244, 247 (S.D.Miss.1997), citing *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985).

Although the Fifth Circuit has not yet addressed the issue of removal under the authority of the All Writs Act, the Second Circuit in *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989), rejected the argument that the removal statutes were the exclusive source of a federal court's removal jurisdiction. The controversy addressed in *Yonkers* was whether a federal district court could exercise jurisdiction over an action brought in state court to enjoin condemnation of certain property by the City of Yonkers. The city had previously agreed, via consent decree, in federal court litigation that the property would be condemned for public housing. *Id.* at 858. The Second Circuit held that "residual jurisdictional authority," derived from the All Writs Act exists to permit removal in "exceptional cases." *Id.* at 864. The Court also recognized four exceptional cases or circumstances, any one of which could justify removal of a state court case to federal court under the All Writs Act: (1) the protection of constitutional rights; (2) the possibility of inconsistent orders; (3) the existence of a federal court-ordered consent decree that needs protection; and (4) the probability that the consent decree would be inadequately defended in state court. *Id.* at 863–65. The Court explained:

> [W]ere we to decide that removal was improper under the All Writs Act, the state court would be faced with a situation in which any order it issued that was inconsistent with the Consent Decree would be subject to the injunctive powers of the federal court under the Anti–Injunction Act. See 28 U.S.C. § 2283 (federal court may not grant injunction against state court "except as

expressly authorized by ... Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments") ... Use of the All Writs Act in this case to effectuate removal thus seems to us to be a less drastic, and therefore preferable, result.

*Id.* at 864. The *Yonkers* Court opined that removal was necessary to protect the integrity of the Consent Decree and that the issues raised by the removed action could not be separated from the relief provided by the Consent Decree. *Id.* at 865.

In 1993, the Second Circuit again visited the question of whether removal is permissible under the All Writs Act and concluded that a district court was authorized under the Act to remove an otherwise unremovable state court case to federal court in cases where removal is necessary to effectuate and prevent the frustration of orders the court previously had issued in its exercise of jurisdiction otherwise obtained. *In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1431 (2d Cir.1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994), the Second Circuit approved a district court's use of the All Writs Act to remove two otherwise unremovable Texas class actions to federal court and subsequently bar class members from litigating their Texas lawsuits. *Id.* at 1430–31. In the two Texas lawsuits, plaintiffs attempted to revive the massive Agent Orange tort litigation which had been consolidated by the Judicial Panel on Multidistrict Litigation in the Eastern District of New York. *Id.* at 1428. The Multidistrict Litigation was resolved pursuant to a settlement agreement, which expressly included as class members those persons who had not yet manifested injury. The agreement permanently barred class members from instituting future actions against defendants arising from Agent Orange exposure. *Id.* at 1428–29. The Second Circuit held that the district court properly removed these state claims to federal court under the All Writs Act asserting that "[i]t is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the Agent Orange I class action and settlement. The court best situated to make this determination is the court that approved the settlement and entered the judgment enforcing it." *Id.* at 1431.

Subsequent cases have allowed removal where prior orders issued in pending litigation must be preserved or where continuing jurisdiction has been retained to effectuate orders previously issued by the federal court. In *In Matter of VMS Securities Litigation,* 103 F.3d 1317 (7th Cir. 1996), the Seventh Circuit approved removal under the All Writs Act where two district courts entered two final judgments approving two class action settlements of securities fraud lawsuits against Prudential Securities. In each order, the respective judges retained jurisdiction over the implementation and enforcement of the settlements. *Id.* at 1320. When a group of class members, who had been given notice of the settlements and had not elected to opt out, filed suit against Prudential in a California state court alleging that Prudential had fraudulently induced them to participate in the class action settlements, Prudential asked the two district judges to enforce their orders by enjoining the California lawsuit. Both judges granted Prudential's requests, finding that the California plaintiffs were attempting to "evade" or make an "end run" around their final judgments. The Seventh Circuit found that the two lower courts correctly had permitted removal under the All Writs Act because, "[where] a lower court reserves its power to enforce a settlement, a breach of the [settlement] agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist." *Id.* at 1321. The Seventh Circuit explained that,

> [b]ecause the district court retained jurisdiction over both actions, it could properly remove the California Investors' claims from California state court pursu-

ant to the All Writs Act.... Applying the Second Circuit's sound reasoning from *Agent Orange I* to this case leads us to the same conclusion that allowing the California Investors to maintain their separate actions in state court would have a substantial 'deleterious effect' on the ... settlement mechanisms....

*Id.*

Removal under the All Writs Act for purposes similar to those stated in *VMS Securities* has been recognized in other cases, such as *Sable v. General Motors Corp.*, 90 F.3d 171, 175 (6th Cir.1996) (exercise of removal jurisdiction proper under All Writs Act where necessary to protect federal consent agreements from conflicting state orders; relief requested by plaintiffs in state court suit would "seriously interfere with provisions in" prior consent judgments entered by the federal court); *Harbor Venture, Inc. v. Nichols*, 934 F.Supp. 322, 323 (E.D.Mo.1996) (where court's earlier decree incorporated settlement agreement, removal of subsequent case under authority of All Writs Act was approved); *Davis v. Glanton*, 107 F.3d 1044, 1047 n. 4 (3d Cir.1997) ("holding that a district court, in exceptional circumstances, may use its authority under the Act to remove an otherwise unremovable state court action to 'prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.' "); *NAACP, Minneapolis Branch v. Metropolitan Council*, 125 F.3d 1171, 1174–75 (8th Cir.1997), (the district court properly used its power under the All Writs Act to take jurisdiction over state-law claims filed in Minnesota state court that threatened the integrity of an earlier federal consent decree).[4]

Although the Eleventh Circuit recently refused to permit removal under the All Writs Act in *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368 (11th Cir.1998), the Eleventh Circuit's rationale was consistent with the holdings of *Agent Orange* and *VMS Securities*. The issue before the *Pacheco de Perez* Court was whether the All Writs Act gave a federal district court the authority to accept jurisdiction over plaintiffs' suits to protect orders issued by the court in a related action. *Pacheco de Perez*, 139 F.3d at 1379. Three of the fifty-six plaintiffs in the removed action were the named plaintiffs in a case already pending in federal court where the district court had entered several orders granting more limited discovery than requested by the plaintiffs. *Id.* The defendants argued that the plaintiffs had filed their suit in Georgia state court in order to avoid the discovery orders. *Id.* According to the defendants, the All Writs Act gave the district court authority to assume supplemental jurisdiction over the removed action. *Id.* The Eleventh Circuit held:

[T]he exercise of authority under the All Writs Act is not appropriate where a district court is 'determining simply the preclusive effect of a prior final judgment on claims or issues expected to be raised in subsequent collateral proceedings' (citation omitted). Rather, a district court's assumption of removal jurisdiction under the Act is proper, if at all, only 'to enforce [the court's] ongoing orders against relitigation and to guard the integrity of its prior rulings over which it has expressly retained jurisdiction.'

*Id.* at 1379–80, citing *VMS Securities*, 103 F.3d at 1324. The Eleventh Circuit's deci-

---

4. In *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), the Supreme Court held that *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), did not authorize the removal of state-law claims to federal court based on an affirmative defense of claim preclusion. The Supreme Court then vacated and remanded the

Eighth Circuit's decision in *NAACP* for further consideration in light of *Rivet*. The Eighth Circuit reinstated its original decision, finding that it had upheld the district court's decision to take jurisdiction of the state-law claims based on the existence of a continuing consent decree, and not on the basis of claim preclusion, thus, the Eighth Circuit concluded that its decision was not at odds with *Rivet*.

sion was based on its finding that at the time of removal no order had been issued which needed protection from the state court action. Specifically, the Eleventh Circuit was persuaded that the state court action would not interfere with any discovery orders entered in the federal action. Any questions, said the Eleventh Circuit, about the preclusive effect of judgments made in the federal action or in other actions on the claims of certain plaintiffs in the state court case could be resolved by the state court. *Pacheco de Perez*, 139 F.3d at 1380. The Court further noted that "[t]he fact that a few of the fifty-six plaintiffs in [the removed] action may be barred from relitigating their claims ... does not justify the exercise of supplemental jurisdiction over the entire case under the All Writs Act." *Id.*

In *Fidelity Financial v. Robinson*, 971 F.Supp. 244 (S.D.Miss.1997), Judge Lee held that removal of a case to federal court was inappropriate under the All Writs Act where defendants based such removal on the federal court's prior temporary certification of a settlement class action involving collateral protection insurance and an injunction which prohibited class members form commencing new actions relating to the same allegations. *Id.* at 249. The court opined that it would be ill-advised to allow removal of the state court action given the temporary nature of the class certification and injunction in the federal class action suit. Since the settlement agreement was only temporary at the time the state court action was removed, there was nothing, according to the court, for the federal court to protect. *Id.* at 250.

## III. *WHETHER REMOVAL HERE WAS PROPER UNDER THE ALL WRITS ACT*

■ The facts of the case *sub judice* present little danger of a state court frustrating the orders previously issued by the various judges of this court who have presided over the Piney Woods litigation since its inception. As stated previously, "ex-ceptional circumstances" are required for a district court to allow removal under the All Writs Act. *See Yonkers, supra.* The "exceptional circumstances" present in the cited cases where removal has been allowed under the authority of the All Writs Act are simply not present here. Even if this court were to conclude that "exceptional circumstances" were present here—thus making the All Writs Act applicable—this court would not be required to allow removal, given the permissive nature of the All Writs Act. *See Robertson v. Western Heritage Ins. Co.*, 1996 WL 722078, *5 (N.D.Tex.1996), citing *In re United States in Matter of Order Authorizing Use of a Pen Register*, 538 F.2d 956, 961 (2d Cir. 1976), *rev'd on other grounds sub nom. United States v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *Fidelity Financial v. Robinson*, 971 F.Supp. 244, 251 n. 6 (S.D.Miss.1997). The plaintiffs here were not included within the class of Piney Woods plaintiffs as defined by this court. In fact, in the Piney Woods litigation, defendant vigorously argued, and this court agreed, that this court had no jurisdiction over the *sub judice* plaintiffs' claims, since those claims failed to reach the jurisdictional minimum of this court. After the district court's decision, the plaintiffs, who assert damage claims of less than $10,000.00, filed suit against Shell in the Circuit Court of Jones County, Mississippi, seeking recovery from Shell for under payment of royalty from 1978 to 1982 as determined by the district court and Fifth Circuit in Piney Woods. Interestingly enough, defendant now asks this court to assume jurisdiction over the same plaintiffs it succeeded in excluding from the Piney Woods litigation for lack of jurisdiction.

Plaintiffs are entitled to pursue their claims in state court without this court's interference, inasmuch as this court has issued no orders which could conceivably limit the state court's jurisdiction to handle litigation involving plaintiffs who were not part of the Piney Woods class. Even the

punitive damage claim of plaintiffs, which alleges damages based upon Shell's alleged refusal to pay royalties that Shell owed to plaintiff as determined by the Piney Woods litigation, merely relates to the Piney Woods litigation in general and does not pose a threat to the previously issued orders or judgments of this court. There are simply no explicit, ongoing orders which are in jeopardy of being relitigated or collaterally attacked in the state forum. In the state forum, plaintiffs' suit will be subject to the same defenses as in this forum. Plaintiffs have even acknowledged that they are ready and willing to accept Piney Woods as binding Mississippi law on the issues addressed in that litigation.

According to Shell, plaintiffs *sub judice* are proceeding on the theory that Shell's litigation practices and conduct in Piney Woods were arbitrary, callous, reckless, and wrongful. Shell says that it is accused of having so acted as an alleged part of a "design and purpose" to "delay and frustrate the administration of justice." Thus, concludes Shell, the plaintiffs herein place directly in issue the entire 23–year history of the Piney Woods litigation. Moreover, says Shell, the plaintiffs already have sought to depose Shell on various procedural and substantive defenses relied upon by Shell during this 23–year history of litigation. Although Shell maintains that this court is in the best position to understand the avalanche of previously-entered orders in the *Piney Woods* litigation, the state court is perfectly capable of reading those opinions and resolving issues of collateral estoppel and/or res judicata.

Furthermore, inasmuch as many of the orders which, according to defendant, need "interpretation" were not issued by the undersigned, this court is not persuaded that it is better suited than the state court to make such an interpretation. For the foregoing reasons, this court finds that removal jurisdiction under the All Writs Act is inappropriate under the circumstances presented here.

## IV. *OVERVIEW OF FRAUDULENT JOINDER*

As plaintiffs point out, "the doctrine of fraudulent joinder typically contemplates improper joinder of defendants by plaintiffs to deprive federal courts of jurisdiction." The principles of the doctrine of fraudulent joinder annunciated in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981); and *Newsome v. Shelter General Ins. Co.*, 792 F.Supp. 1022 (S.D.Miss. 1991), apply to fraudulently joined defendants as well as fraudulently joined plaintiffs. *See Nelson v. St. Paul Fire & Marine Ins. Co.*, 897 F.Supp. 328, 331 (S.D.Tex.1995) (standard for analyzing claims of fraudulent joinder apply equally as well to plaintiffs as to defendants); *Oliva v. Chrysler Corp.*, 978 F.Supp. 685, 689 (S.D.Tex.1997) (citizenship of party-plaintiff may be disregarded for purposes of determining whether diversity jurisdiction exists if removing party can show that nondiverse plaintiff was fraudulently joined); *c.f. Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 224 (5th Cir.1998) (where defendant contended that plaintiff was included as party solely to defeat federal diversity jurisdiction, Fifth Circuit held that district courts should address issues of subject matter jurisdiction before deciding personal jurisdiction).

It is well-settled that when confronted with a claim of fraudulent joinder, the court must ascertain whether the removing party has proven "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the ... defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Cavallini*, 44 F.3d at 259; *see also Newsome*, 792 F.Supp. at 1024–25. This court must, therefore, examine the state court pleadings in light of the applicable law to determine whether any alleged facts support the asserted claim. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir.1979).

However, "[t]he Court is not to pretry substantive factual issues in making this preliminary determination as to the existence of subject-matter jurisdiction, but must instead resolve 'all contested issues of substantive fact in favor of the plaintiff.'" *Newsome*, 792 F.Supp. at 1024, quoting *B., Inc.*, 663 F.2d at 551. Furthermore, any uncertainty or ambiguity as to the current state of controlling substantive law must be resolved in the light most favorable to the plaintiff. *B., Inc.*, 663 F.2d at 551. Where "fraudulent joinder" is alleged, the plaintiff's complaint must give rise to an arguably reasonable basis for predicting that state law might impose liability on the defendant under the facts; or, according to settled jurisprudence, plaintiff's claim should be deemed fraudulent, and lack of diversity will not prevent removal. *Gray*, 646 F.Supp. at 29 (citing *Tedder v. F.M.C. Corp.*, 590 F.2d at 117). Furthermore, the removing party bears the burden of establishing fraudulent joinder. *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

## V. *WHETHER PLAINTIFFS HERE WERE FRAUDULENTLY JOINED*

■ In the instant case, plaintiffs Sims and Patton are citizens of Texas. Defendant is also a Texas citizen for jurisdictional purposes. Defendant contends that the Texas-residing plaintiffs, Sims and Patton, were fraudulently joined solely to defeat diversity jurisdiction, and, therefore, their citizenship should be ignored. Defendant argues that the claims of these two plaintiffs are clearly time barred by the applicable statute of limitations.[5] The plaintiffs, on the other hand, argue that the pendency of the Piney Woods class action

tolled the applicable statute and, further, that the claims of Plaintiffs Sims and Patton are identical to those of all of the other plaintiffs.

To support plaintiffs' contention that the statute of limitations was tolled during the Piney Woods litigation, plaintiffs rely on *Vaught v. Showa Denko K.K.*, 107 F.3d 1137 (5th Cir.1997), *cert. denied* 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997), where the Fifth Circuit held:

> Without doubt, there is a strong federal policy favoring the tolling of limitations periods as to all potential members of a Rule 23 class action. The Supreme Court explained in American Pipe that a contrary holding would "frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties— precisely the multiplicity of activity which Rule 23 was designed to avoid...."

*Id.* at 1146–47, quoting *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 551, 94 S.Ct. 756, 765, 38 L.Ed.2d 713 (1974).

Plaintiffs contend that the extent of defendant's liability in the Piney Woods litigation was not finally decided until April 1997. Therefore, argue plaintiffs, they could not accurately calculate their damages in order to determine whether or not their claims would exceed the $10,000.00 amount necessary to establish membership in the Piney Woods class as defined by this court.

This court issued a Memorandum Opinion and Order in the Piney Woods litigation dated January 11, 1999, which ad-

---

**5.** Mississippi's general personal injury statute for injuries not otherwise provided for, Miss. Code Ann. § 15–1–49, once provided for a six-year limitation period. The six-year period was reduced to three years effective March 12, 1990. However, it is the earlier version of the statute that applies in the instant case, because the amended version applies only to causes of action accruing after July 1, 1989. *See Alvarez v. Coleman*, 642 So.2d 361, 373 n. 11 (1994). This case began in 1974.

dressed the statute of limitations issue. This court rejected the Piney Woods plaintiffs' argument regarding the tolling of the statute of limitations and held that the claims of the royalty owners who were excluded from the class by Judge Russell's December, 1978, Order were time-barred. *See* Memorandum Opinion and Order dated January 11, 1999, pp. 15–22.

Still, notwithstanding this court's previous ruling on the statute of limitations issue, this court is persuaded to remand the case *sub judice* because, at this date, this court cannot say that plaintiffs Sims and Patton have "absolutely no possibility of recovering" in state court. This court's decision regarding the statute of limitations issue is on appeal and has not been affirmed by the Fifth Circuit and, thus, is still subject to change.

Furthermore, the statute of limitations defense asserted by the defendant applies equally to all plaintiffs in this action. Defendant cannot pick and choose which plaintiffs it wants to keep and which ones it wants to attack as "fraudulently joined" based upon a statute of limitations defense. To do so is an attempt to manipulate the jurisdiction of this court—the exact conduct that defendant accuses plaintiff of undertaking. Finally, the state court is well capable of applying the substantive law of the State of Mississippi regarding the general statute of limitations and Mississippi tolling principles as well as principles of res judicata and collateral estoppel.

Accordingly, this court finds that defendant has not met its burden of proving that Sims and Patton have no possibility of recovering against defendant in state court.

## VI. *CONCLUSION*

Based upon the foregoing analysis, this court finds that neither the All Writs Act nor § 1332 of Title 28 of the United States Code provides a basis for removal of this action to federal court. Accordingly, this court hereby grants plaintiffs' motion to remand this action to the Circuit Court of Jones County, Mississippi.